# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:                                                    CASE NO.: 6:17-bk-04395-CCJ
                                                                         CHAPTER 7

**Giselle Karina Castro aka Giselle K**
**Salcedo,**

     **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured Creditor, NATIONSTAR MORTGAGE LLC, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), Giselle Karina Castro aka Giselle K Salcedo, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on June 30, 2017.

2.    Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. §

1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes

affecting the jurisdiction of the Bankruptcy Courts generally.

3.    On January 31, 2007, Debtor(s) executed and delivered a Promissory Note ("Note") and a

Mortgage ("Mortgage") securing payment of the Note in the amount of $375,000.00 to Lehman

Brothers Bank, FSB. The Mortgage was recorded on February 20, 2007 in Book 27203 at Page

527 of the Public Records of Prince George's County, MD.  The loan was transferred to Secured

Creditor. True and accurate copies of documents establishing a perfected security interest and

ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The

documents include copies of the Note with any required endorsements, Recorded Mortgage,

Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek

a lift of the automatic stay and foreclose, if necessary.

4.    Attached are redacted copies of any documents that support the claim, such as promissory

notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments,

mortgages, and security agreements in support of right to see a lift of the automatic stay and

foreclose if necessary.

5.    The mortgage provides Secured Creditor a lien on the real property located at 5603

Haddon Drive, Lanham, MD 20706 in Prince George's County, and legally described as stated in

the mortgage attached in Composite Exhibit "A."

6.    The terms of the aforementioned Note and Mortgage have been in default, and remain in

default, since October 1, 2016.

7.   The appraised value of the property is $273,000.00.  See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

8.   Based upon the Debtor(s)' schedules, the property is surrendered and claimed as non-exempt.  The Trustee has not abandoned the property.

9.   Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

10. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

11. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

12. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage.

Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

13. A Proposed Order accompanies this Motion.  See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

**I HEREBY CERTIFY** that on July 31, 2017 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

Giselle Karina Castro
aka Giselle K Salcedo
10949 Moss Park #313
Orlando, FL 32832

Walter F Benenati
2702 E Robinson Street
Orlando, FL 32803

Trustee
Arvind Mahendru
5703 Red Bug Lake Road
Suite 284
Winter Springs, FL 32708

U.S. Trustee
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Bouavone Amphone
Bouavone Amphone, Esquire
Florida Bar Number 20644
Email: bamphone@rasflaw.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:                                          Case No. 6:17-bk-04395-CCJ
                                                Chapter 7

Giselle Karina Castro aka Giselle K Salcedo,

      Debtor(s).
_____/

## DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY BY (*NATIONSTAR MORTGAGE LLC*)

I, __Chastity Wilson__, declare under penalty of perjury as follows:

1.    I am authorized to sign this declaration as a(n) __Assistant Secretary__ of Nationstar Mortgage LLC ("Nationstar"). This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    Nationstar maintains records for the loan that is secured by the mortgage described in paragraph 6 below. As part of my job responsibilities for Nationstar, I am familiar with the type of records maintained by Nationstar in connection with the loan.

3.    I have personal knowledge of the facts in this affidavit based upon a review of Nationstar's business records, and the information in this affidavit is taken from Nationstar's business records. I have personal knowledge of Nationstar's procedures for creating the records maintained by Nationstar in connection with the loan. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) made and kept in the usual and ordinary course of Nationstar's regularly conducted business activities; and (c) created by Nationstar as regular practice.

4.    Giselle Karina Castro aka Giselle K Salcedo executed a note dated January 31, 2007 in favor of Lehman Brothers Bank, FSB, in the original principal sum of $375,000.00 (the "Note"). A true and correct copy of the Note is attached to the Motion as <u>Composite Exhibit A.</u>

5.    NATIONSTAR MORTGAGE LLC directly or through an agent, has possession of the promissory note and held the note at the time of filing of the Movant's Motion for Relief from the Stay. The promissory note is endorsed in blank.

6.    Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion). A true and correct copy of the Mortgage is attached to the Motion as <u>Composite Exhibit A.</u>

7.    All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a true and correct copy of which is attached to the Motion as <u>Composite Exhibit A.</u>

8.    There is an outstanding unpaid principal balance under the Note in the amount of $274,525.86.

9.    The following chart sets forth the number and amount of postpetition payments due pursuant to the terms of the Note that have been missed by the Debtor(s):

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 1 | 7/1/17 | 7/1/17 | $1,580.08 | $1,580.08 |
| Less postpetition partial payments: | | | | ($0.00) |

**Total: $1,580.08**

-2-

10.    The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor(s):

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 2 | 10/1/16 | 11/1/16 | $1,551.31 | $3,102.62 |
| 8 | 12/1/16 | 7/1/17 | $1,580.08 | $12,640.64 |
| Less partial payments: | | | | ($0.00) |

Total: $15,743.26 _____

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _27_ day of _July_____, _2017_ .

Name: Chastity Wilson
Title: Assistant Secretary of Nationstar Mortgage LLC
Affiant

**Composite Exhibit "A"**

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| January 31, 2007 | BETHESDA | MARYLAND |
|---|---|---|
| [Date] | [City] | [State] |

5603 HADDON DRIVE, LANHAM, MARYLAND 20706

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    375,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.750   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   March 1 , 2007 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   February 1, 2037  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO   80112

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $   2,686.55  . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT**

Wolters Kluwer Financial Services
VMP®-836N (0210).01
Page 1 of 4

Form 3520 1/01

Initials: 65



**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **February, 2012** , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 75 HUNDREDTHS** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.750** % or less than **7.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.750** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

Initials: ___

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3520 1/01

Initials: GS

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
GISELLE K SALCEDO                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By: _____
    E. Todd Whittemore
    Vice President

PAY TO THE ORDER OF *[Sign Original Only]*
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: _____
    PAUL E. SVEEN
    AUTHORIZED SIGNATORY

■

## ADDENDUM TO NOTE

This addendum is made **January 31 , 2007** and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
    5603 HADDON DRIVE , LANHAM , MARYLAND 20706
**AMENDED PROVISIONS**
        In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        Limits on Interest Rate Changes
        The interest rate I am required to pay at the first Change Date will not be greater than    13.750 % or less than 7.750%.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than    TWO         percentage point(s) (  2.000  %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than    13.750     %.  My interest rate will never be less than   7.750    %.

**UNIFORM SECURED NOTE**
        This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

        **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

        If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

        If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

        In Witness Thereof, Trustor has executed this addendum.

_Nelima Gunier_ _____          _Giselle Salcedo_ _____
Witness

_1·31·07_ _____          _____
Date                                  GISELLE K SALCEDO

_____          _____
Date

_____          _____
Date

_____
Date

DIS0211
1201  LIBOR Addendum to Note                                          1/01

**INTEREST-ONLY ADDENDUM**
**TO ADJUSTABLE RATE PROMISSORY NOTE**

LOAN NUMBER: 0045196128

PROPERTY ADDRESS:

5603 HADDON DRIVE, LANHAM, MARYLAND 20706

THIS ADDENDUM is made this  31st  day of  January  ,  2007  , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to LEHMAN BROTHERS BANK, FSB  (the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

3.    PAYMENTS

   (A)  Time and Place of Payments

      I will pay interest by making payments every month for the first  120  payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next  240  payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

      I will make my monthly payments on the first day of each month beginning on  March 1 , 2007  .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on  February 1, 2037  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

      I will make my payments at  327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO  80112  or at a different place if required by the Note Holder.

   (B)  Amount of My Initial Monthly Payments

      Each of my initial monthly payments will be in the amount of U.S. $  2,421.88  .  This payment amount is based on the original principal balance of the Note.  This payment amount may change.

████████████

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(C)  Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 75 HUNDREDTHS                    percentage point(s) (   2.750  %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).   Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

   During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A)  Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.00    % of my overdue payment of interest during the Interest-Only Period,  5.00    % of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

Dated: __January 31, 2007__

_____

Borrower  **GISELLE K SALCEDO**


_____

Borrower

27203    527

AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

Return To:

**After recording please return to:**
**MG TITLE, LLC**
8002 Wisconsin Ave., 2ⁿᵈ Floor
Bethesda, MD 20814

ESCROW #:

TERRY ELDER
AURORA LOAN SERVICES
400 PROFESSIONAL DRIVE, SUITE 100
GAITHERSBURG, MD 20879

Prepared By:

Insurer: First American Title Ins. Co.

Tax ID No.: 20-2228575

2001 FEB 20 P 2:28
CLERK OF THE COURT

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated    **January 31, 2007**
together with all Riders to this document.
**(B) "Borrower"** is    GISELLE K SALCEDO & DAYS K SALcedo

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is    **LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**

Lender is a   **FEDERAL SAVINGS BANK**
organized and existing under the laws of    **UNITED STATES**

LOAN #:

MARYLAND-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3021 1/01

VMP-6A(MD) (0602)
Page 1 of 15
Initials: GS DS
VMP Mortgage Solutions, Inc.



27203 528

Lender's address is **327 INVERNESS DRIVE SOUTH , ENGLEWOOD, CO  80112**

**(D) "Trustee"** is **KENNETH MACFADYEN AND MARK FRIEDMAN** .

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **January 31, 2007**
The Note states that Borrower owes Lender
**THREE HUNDRED SEVENTY FIVE THOUSAND & 00/100**                                    Dollars
(U.S. $ **375,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **February 1, 2037**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

REFINANCE ADDENDUM

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials: ___ DS

-6A(MD) (0602)                                    Page 2 of 15                                    Form 3021  1/01

27203    529

## LEGAL DESCRIPTION

Lot numbered Seven (7) in Block lettered "F" in the subdivision known as "WESTGATE WOODS" as per plat thereof recorded in Plat Book WWW 40 at Plat 3 among the Land Records of Prince George's County, Maryland; Being in the 20th Election District.

**TAX ID:** ████████████

27203    530

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                                              of     Prince George's                           :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

Parcel ID Number:                                                   which currently has the address of
5603 HADDON DRIVE                                                                              [Street]
LANHAM                                           [City], Maryland      20706      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP ®-6A(MD) (0602)                          Page 3 of 15         Initials: UJ DS          Form 3021  1/01

27203    531

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any

Initials: DS

27203   532

or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within



27203   533

10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

27203    534

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys'

27203   535

fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

27203    536

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _DS_

27203    537

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



Initials: ⌐ ┐ DS

-6A(MD) (0602)                    Page 10 of 15                    Form 3021  1/01

**27203    538**

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection

27203    539

with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the**



VMP®-6A(MD) (0802)                     Page 12 of 16          Initials: DS          Form 3021  1/01

27203    540

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of                      % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

27203    541

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          GISELLE K SALCEDO          -Borrower


_____          _____ (Seal)
                                          Oalys K. Salcedo           -Borrower


                         _____ (Seal)          _____ (Seal)
                              -Borrower                      -Borrower


                         _____ (Seal)          _____ (Seal)
                              -Borrower                      -Borrower


                         _____ (Seal)          _____ (Seal)
                              -Borrower                      -Borrower


VMP -6A(MD) (0602)                    Page 14 of 15                    Form 3021   1/01

27203  542

**STATE OF MARYLAND,**                                          County ss:
    I Hereby Certify, That on this ___ day of ___, before me, the subscriber, a
Notary Public of the State of Maryland, in and for the *county aforesaid*
personally appeared

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
    AS WITNESS: my hand and notarial seal.
My Commission Expires: _____
                                                    Notary Public

**STATE OF** *Maryland*         *Montgomery*                      County ss:
    I Hereby Certify, That on this *31 st* day of *January, 2007*, before me, the subscriber,
a Notary Public of the State of *Maryland* and for the *County aforesaid*
personally appeared *Thomas H. Gimer, Esq.*
the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of
money advanced at the closing transaction by the secured party was paid over and disbursed by the party or
parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds
in the closing transaction or their respective agent at a time not later than the execution and delivery by the
Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is
duly authorized to make this affidavit.
    AS WITNESS: my hand and notarial seal.
My Commission Expires: *10/18/09*
                                                    Notary Public

This is to certify that the within instrument was prepared

                                   This is to certify that the within instrument was
                                   prepared by one of the parties to the instrument.

                                   *melissa gunew*

27203    543

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 31st day of January, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

5603 HADDON DRIVE, LANHAM, MARYLAND 20706

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 7.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of February , 2012 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 75 HUNDREDTHS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument**

VMP-838R (0402)    **Form 3138 1/01**
Page 1 of 3        Initials: DS
VMP Mortgage Solutions, Inc.
(800)521-7291



27203   544

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.750 % or less than 7.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _____

-838R (0402)          Page 2 of 3          Form 3138 1/01

27203   545

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
GISELLE K SALCEDO        -Borrower          Dalys K. Salcedo          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

VMP-838R (0402)                Page 3 of 3                    Form 3138 1/01

27203    546

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made    January 31 , 2007                    and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
5603 HADDON DRIVE , LANHAM , MARYLAND 20706

**AMENDED PROVISIONS**

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than13.750% or less than7.750    %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than    TWO            percentage point(s) ( 2.00%) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 13.750 %. My interest rate will never be less than7.750    %.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1202 LIBOR Addendum to Rider                    page 1 of 2                    1/01
WA  DIS0222

27203    547

In Witness Thereof, Trustor has executed this addendum.

Witness

1·31·07
Date

Borrower Signature  **GISELLE K SALCEDO**

1·31·07
Date

Borrower Signature  Dalys K. salcedo

Date

Borrower Signature

Date

Borrower Signature

27203    548

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: ▓▓▓▓▓▓▓

PROPERTY ADDRESS: 5603 HADDON DRIVE
LANHAM, MARYLAND 20706

THIS ADDENDUM is made this 31st                    day of January , 2007
, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider")
dated the same date as this Addendum executed by the undersigned and payable to

LEHMAN BROTHERS BANK, FSB, 327 INVERNESS DRIVE SOUTH ENGLEWOOD, CO  80112
(the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are
changed by this Addendum.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

     (C)    Calculation of Changes

          Before each Change Date, the Note Holder will calculate my new interest rate by adding  2.75
percentage point(s) (  2.7%) to the Current Index for such Change Date.  The Note Holder will then
round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to
the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change
Date.

          During the Interest-Only Period, the Note Holder will then determine the amount of the
monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my
monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I
make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of
principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced
to the amount necessary to pay interest at the then current interest rate on the lower principal balance.
At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will
determine the amount of the monthly payment that would be sufficient to repay in full the unpaid
principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable,
in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the
new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will
not be reduced due to voluntary prepayments.

Dated:  1·31·07                                                         _Giselle Salcedo_____
                                                          Borrower    GISELLE K SALCEDO

                                                          _Dilys Salcedo_____
                                                          Borrower  Dilys K. Salcedo

This is to certify that the attached Instrument has
been prepared under the supervision of the
undersigned Maryland attorney.

_Thomas E. Dobyns_

Thomas E. Dobyns, Esquire

Investor Loan No.: ▮▮▮▮▮

This document was prepared by RUTH RUHL, P.C.

_____ [Space Above This Line For Recording Data] _____

MIN: ▮▮▮▮▮
SIS: (888) 679-6377

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")[1]: Giselle K. Salcedo
Lender ("Lender"): Aurora Loan Services LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): January 31st, 2007
Loan Number ▮▮▮▮▮
Date and recording information of first lien Mortgage dated January 31st, 2007 and recorded on February 20th,
2007, in Book/Liber 27203, Page 527, Instrument No. N/A, Official Records of Prince George's County, Maryland,
and Note ("Note"), bearing the same date as, and secured by, the Mortgage, which covers the real and personal
property described in said Mortgage and defined therein as the Property, identified as:
Property Address: 5603 Haddon Drive, Lanham, Maryland 20706 ("Property")
SEE ATTACHED EXHIBIT "A"
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for the Lender and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

**The original principal balance was $375,000.00. The current unpaid principal balance is $371,257.16.
$13,660.41 will be added to the current unpaid principal balance resulting in a new principal balance of
$384,917.57.**

[1]If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations.** I certify, represent to Lender and agree:

A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.   I live in the Property as my principal residence, and the Property has not been condemned;

C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

D.   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Agreement;

B.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on August 1st, 2009 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on September 1st, 2009.

A.   The new Maturity Date will be: August 1st, 2049.

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $384,917.57 (the "New Principal Balance").

C. $13,660.41 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $371,257.16. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal as of August 1st, 2009 and the first new monthly payment on the Interest Bearing Principal will be due on September 1st, 2009. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------------------|-----------------------|-------------------|----------------------------|
| 1-5 | 2.00% | 08/01/2009 | $1,124.26 | $378.00, adjusts annually after year 1 | $1,502.26, adjusts annually after year 1 | 09/01/2009 | 60 |
| 6 | 3.00% | 08/01/2014 | $1,306.13 | Adjusts Annually | Adjusts Annually | 09/01/2014 | 12 |
| 7 | 4.00% | 08/01/2015 | $1,498.10 | Adjusts Annually | Adjusts Annually | 09/01/2015 | 12 |
| 8 | 5.00% | 08/01/2016 | $1,698.63 | Adjusts Annually | Adjusts Annually | 09/01/2016 | 12 |
| 9-40 | 5.25% | 08/01/2017 | $1,749.53 | Adjusts Annually | Adjusts Annually | 09/01/2017 | 384 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.    **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

Loan No.: ████████

# ERROR AND OMISSIONS / COMPLIANCE AGREEMENT

The undersigned Borrower(s) for and in consideration of the Loan Modification Agreement offered by Lender, its successors and/or assigns in the amount of $ 371,257.16 , modifying the original Promissory Note secured by a Security Instrument dated January 31st, 2007 agrees to fully cooperate with any reasonable requests made by Lender, or its agent, to correct typographical errors in the Loan Modification Agreement enabling Lender to sell, convey, guarantee or obtain insurance for any investor or institution, including but not limited to, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Secretary of Veterans Affairs, or any municipal bonding authority, to ensure enforceability of the Loan Modification Agreement. Requests may include, but are not limited to, all changes, corrections, re-execution or modification of any document related to such loan, as may be required.

The undersigned will comply with all requests within thirty (30) days from the date they are made by Lender or its agent. If the Borrower(s) fail to meet his/her/their obligations, Borrower(s) acknowledge liability for all costs including, but not limited to, actual expenses, legal fees, court costs, and marketing expenses incurred by Lender to enforce its rights under the Loan Modification Agreement.

Dated effective this 31 day of August , 2009

_____ (Seal)         _____ (Seal)
Giselle K. Salcedo                    -Borrower                                       -Borrower

_____ (Seal)         _____ (Seal)
                                      -Borrower                                       -Borrower

State of Maryland                              §
                                               §
County/Parish of Prince George's               §

The foregoing instrument was acknowledged before me on _____, _____,[date], by Giselle K. Salcedo

[name of person acknowledged]

(Seal)

DENDRY L. AGUILAR
Notary Public, State of Maryland
County of Montgomery
My Commission Expires September 10, 2011

Notary Public, State of Maryland
My Commission Expires: September 10, 2011

ERROR AND OMISSIONS/COMPLIANCE AGREEMENT-MODIFICATION                    Page 1 of 1

Loan No.: ███████

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:

BORROWER:

_N/A Modification_____          _Giselle Salcedo_  8/31/09
                        (Date)          Giselle K. Salcedo              (Date)

_N/A Modification_____          _____
                        (Date)                                  (Date)

_____                   _____
                        (Date)                                  (Date)

_____                   _____
                        (Date)                                  (Date)

Loan No.: 

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.


_____  -Borrower        _____  -Borrower
Giselle K. Salcedo


_____  -Borrower        _____  -Borrower

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note, as amended, allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

In Witness Whereof, the Lender and I have executed this Agreement.

8/31/09
_____
Date

_____ (Seal)
Giselle K. Salcedo   –Borrower

_____
Date

_____ (Seal)
–Borrower

_____
Date

_____ (Seal)
–Borrower

_____
Date

_____ (Seal)
–Borrower

ACKNOWLEDGEMENT (MARYLAND)                                                    Page 4 of 6

## BORROWER ACKNOWLEDGMENT

State of     Maryland                 §
                                      § ss.:
County of  Prince George's            §

    To Wit: I hereby certify, that on this  *31*  day of *August* in the year *2009* , before the subscriber
*[style of officer taking acknowledgment]*, personally appeared  Giselle K. Salcedo

*[name of person making acknowledgment]*, and acknowledged the foregoing instrument to be his act

DENDRY L. AGUILAR
Notary Public, State of Maryland
County of Montgomery
My Commission Expires September 10, 2011

(Signature)

Title of Officer

9-9-09
-Date

Aurora Loan Services LLC
-Lender

By: _____

Printed/Typed Name: Matthew T. Justice

Its: *Vice President*

9-9-09
-Date

Mortgage Electronic Registration Systems, Inc.
-Mortgagee

By: _____

Printed/Typed Name: Amber Paxton

Its:  Vice President

## LENDER/MORTGAGEE ACKNOWLEDGMENT

State of     Colorado              §
                                   § ss.:
County of   Douglas                §

To Wit; I hereby certify, that on this *9th* day of *Sept* in the year *2009*  , before the subscriber  *ARTHUR B Brown FU* _____ *[name of* *[style of officer taking acknowledgment],* personally appeared  Matthew T. Justice person making acknowledgment],* who acknowledged himself/herself to be the  *Vice President* of  Aurora Loan Services LLC

*[name of said entity]* (the "Entity") and by   Amber Paxton                          , Vice President of Mortgage Electronic Registration Systems, Inc., Mortgagee, that he/she, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of said Entity by himself/herself as such officer (and certified that this conveyance is not part of a transaction in which there is a sale, lease, exchange or other transfer of all or substantially all of the property and assets of said Entity).

(Seal, if any)

(Signature)

Printed/Typed Name:  *Arthur B Brown III*

*Notary*
Title of Officer

My Commission Expires:  *7|17|13*

ARTHUR B. BROWN III
NOTARY PUBLIC
STATE OF COLORADO
MY COMM. EXPIRES JULY 17, 2013

**After Recording Return To:**
Aurora Loan Services LLC
Attn: Recording Department
10350 Park Meadows Drive
Littleton, Colorado 80124

ACKNOWLEDGMENT (MARYLAND)

Loan No.: █████████

### EXHIBIT "A"

LOT NUMBERED SEVEN (7) IN BLOCK LETTERED "F" IN THE SUBDIVISION KNOWN AS "WESTGATE WOODS" AS PER PLAT THEREOF RECORDED IN PLAT BOOK WWW 40 AT PLAT 3 AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND; BEING IN THE 20TH ELECTION DISTRICT.

TAX ID: ████████

Clerk of the
Circuit Court

35119  057

2013 AUG 23  PM 1: 05

CR 850 00  461

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 (469)549-2000.

Said Deed of Trust is dated 01/31/2007, which was executed by GISELLE K. SALCEDO AND DALYS K. SALCEDO and recorded among the land records of LANHAM (City), PRINCE GEORGE'S (County), Maryland, in Liber 27203, Page 527, and/or as Instrument # .

Property is commonly known as: 5603 HADDON DRIVE, LANHAM, MD 20706.

Dated on 07/__2__/2013 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS

By: _____
Nadine Homan
ASST. SECRETARY

All Authorized Signatories whose signatures appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 07/__2__/2013 (MM/DD/YYYY), by Nadine Homan as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 6, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: Nationstar Mortgage LLC, C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683
NSDAV_____ -- NSDAV  MIN_____MERS PHONE 1-888-679-6377 DOCR
T2813063717  [C] FRMMD1

INT FD SURE $      40.00
RECORDING FEE     20.00
TOTAL             60.00
Rcst FC86    Rcpt # 40456
NHB   CLN    Blk # 4453
Aug 23, 2013   01:06 PM

Copy

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **February 20, 2007**
Unpaid Principal Balance: **$337,339.00**
Original Loan Amount: **$375,000.00**
New Money: **$30,577.75**
**Tax Parcel No. 20-2228575**
**New Loan Amount: $367,916.75**

## FREDDIE MAC STANDARD MODIFICATION AGREEMENT

Borrower ("I"):  **GISELLE SALCEDO**. Borrower is the grantor/mortgagor under the first lien mortgage, deed of trust, or security deed referenced below. If more than one Borrower is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"):  **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** Lender is the beneficiary/mortgagee under the first lien mortgage, deed of trust, or security deed referenced below.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **January 31, 2007.**

Loan Number: ▮▮▮▮▮▮▮▮
Property Address ("Property"):  **5603 HADDON DR**
                                **LANHAM, MD 20706**

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under the Mortgage. MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. The MERS street address is 1901 E Voorhees Street, Suite C, Danville, IL 61834.

Legal Description:
See Exhibit "A" attached hereto and made a part hereof;

Prior instrument reference: Book/Liber 27203, Page 527, Instrument No: N/A, of the Official

Copy

**Records of PRINCE GEORGES County, MD.**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Freddie Mac Standard Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. The property has not been condemned nor have I received notice of condemnation.

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Standard Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Home Affordable Modification Program (HAMP) and Freddie Mac Standard Modification, are true and correct; and

    F. I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.

    G. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;



FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

*(page 2 of 10 pages*

Copy

B.  The Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

C.  **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **July 1, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **July 1, 2015.**

A.  The Maturity Date will be: **June 1, 2055.**

B.  The modified principal balance of my Note will include all amounts and arrearages that are past due past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$367,916.75** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  **$89,761.66** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$278,155.09.** Interest at the rate of **4.000%** will begin to accrue on the Interest Bearing Principal Balance as of **June 1, 2015** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **July 1, 2015.** My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.000% | June 01, 2015 | $1,162.52 | $352.93 May adjust periodically | $1,515.45 May adjust periodically | July 01, 2015 | 480 |

Copy

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other agreement that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in

Copy

accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and

Copy

existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.  This Agreement modifies an obligation secured by an existing security instrument recorded in PRINCE GEORGES County, MD, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $337,339.00. The principal balance secured by the existing security instrument as a result of this Agreement is $367,916.75, which amount represents the excess of the unpaid principal balance of this original obligation.

Copy

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
GISELLE SALCEDO -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maryland, _Prince George's_ County, to wit:

I hereby certify, that on this _8th_ day of _June_ _____, in the year _2015_,

before the subscriber, _GEETA R. LALWANI_ Notary Public,
                              (please print name)
personally appeared **GISELLE SALCEDO**, and acknowledged the foregoing deed to be his act.

_____
(Signature)

My commission expires : _03/13/2016_

GEETA R. LALWANI
NOTARY PUBLIC STATE OF MARYLAND
Prince George's County
My Commission Expires March 13, 2016

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

*(page 7 of 10 pages*

Copy

NATIONSTAR MORTGAGE LLC

By: _____ (Seal) - Lender
Name: _____Azra Habibija_____
Title: **Assistant Secretary**

_____6|17|15_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____
The State of TX
County of Dallas

Before me _____Justin T. Gfeller_____ /Notary Public (name/title of officer) on this day
personally appeared _____Azra Habibija_____, the Assistant Secretary of Nationstar
Mortgage LLC (known to me (or proved to me on the oath of _____ or through
_____ (description of identity card or other document)) to be the
person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __17th__ day of __June__, A.D. _2015_.

_____
Signature of Officer

_____Notary Public_____
Title of Officer

My Commission expires : __3,31/19__



JUSTIN T. GFELLER
Notary Public, State of Texas
My Commission Expires
March 31, 2019

████████████████████████████████████████████

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

*(page 8 of 10 pages)*

**Copy**

Azra Habibija     6|17|15

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX
County of Dallas

Before me _____Justin T. Gfeller_____/Notary Public (name/title of officer) on this day
personally appeared _____Azra Habibija_____ , the Assistant Secretary of Mortgage
Electronic Registration Systems, Inc, known to me (or proved to me on the oath of _____
or through _____ (description of identity card or other document)) to be the person
whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __17th__ day of __June__ , A.D. __2015__.



Signature of Officer

_____Notary Public_____
Title of Officer

My Commission expires : __3/31/19__

JUSTIN T. GFELLER
Notary Public, State of Texas
My Commission Expires
March 31, 2019

Copy

**This Document Prepared By:**
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**Record and Return To:**
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

This is to certify that the within instrument was prepared by NATIONSTAR MORTGAGE LLC, one of the parties named in the instrument.

Azra Habibija

Assistant Secretary for NATIONSTAR MORTGAGE LLC

FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14

*(page 10 of 10 pages)*

Copy

Loan No.███████████
Borrower: GISELLE SALCEDO

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, GISELLE SALCEDO ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated January 31, 2007, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency

**Copy**

Loan No. ███████

Borrower: GISELLE SALCEDO

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____     3/30/15
Borrower - GISELLE SALCEDO          Date

_____     _____
Borrower -                          Date

_____     _____
Borrower -                          Date

_____     _____
Borrower -                          Date

(Page 13 of 15)

Copy

**Prince George's County Office of Finance, Treasury Division**   County Transfer Tax 1.4%
**Finance Affidavit**
(REQUIRED)   State Recordation Tax 5.50 per 1000.00
(Rounded up to next 500.00)

PROPERTY TAX ID # ▮▮▮▮▮
**DO YOU OWN ANY OTHER PROPERTIES?**  Y / N  (PLEASE CIRCLE ONE)
I/WE CERTIFY, under the penalties of perjury, that the following are accurate responses regarding the financing we are offering for record on this date in accordance with Tax Property Article 12-102 and County Code 10-187(A)

**REQUIRED INFORMATION:** The following information refers ONLY to the loan(s) being REFINANCED or MODIFIED.

| LIBER/FOLIO(S) | ORIGINAL LOAN AMOUNT(S) | UNPAID PRINCIPAL BALANCE(S) (no interest or |
|---|---|---|
| 1) 27203  527  N/A | $375,000.00 | $337,339.00  penalty to be |
| 2) | | added) |

**A.  STATE RECORDATION TAX – PRINCIPAL RESIDENCE**
The "**REQUIRED INFORMATION**" above MUST be completed when using this clause.

_____ Borrower initials here only if ALL qualifications listed below apply:
a.  This is a refinance (Paying off an existing loan) of your principal residence.
b.  You are the original mortgagor or assumed the debt from the original mortgagor. (For tax purposes)
*Recordation tax based on difference between new loan amount and the unpaid principal balance of the loan(s) being refinanced.*
(NOTE: "**B-1**" or "**B-2**" MUST be initialed)

**B.  COUNTY TRANSFER TAX – PRINCIPAL RESIDENCE – (ONLY INITIAL ONE B CLAUSE)**
The "**REQUIRED INFORMATION**" above MUST be completed if refinancing (Paying off) or modifying amending existing loan

B1. _____ Borrower initials here only if ALL qualifications listed below apply:
a.  This is a (1) new loan (NOT Paying off an existing loan) (2) Modification (amending an existing loan) or a (3) refinance *(Paying off an existing loan)* on your principal residence.
b.  You had a **purchase money trust/mortgage** (Borrowed money to purchase property).
c.  The *purchase money* trust/mortgage has been on record for more than 12 months.
*Exempt from County Transfer Tax.*     (NOTE: If refinancing, "**A**" MUST be initialed)
REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced.

OR

The "**REQUIRED INFORMATION**" above MUST be completed if using this clause.

B2. _____ Borrower initials here only if ALL qualifications listed below apply:
a.  This is a refinance *(Paying off existing loan)* of your principal residence, *and*
b.  You did NOT have a purchase money trust/mortgage or purchase money was recorded less than 12 months ago.
*County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan(s) being refinanced.*
REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced. (NOTE: "**A**" MUST be initialed)

**C.  COUNTY TRANSFER TAX – NON PRINCIPAL RESIDENCE/COMMERCIAL PROPERTY**
The "**REQUIRED INFORMATION**" above MUST be completed if using this clause.

_____ Borrower initials here only if ALL qualifications listed below apply:
a.  This is a refinance *(Paying off existing loan)or modification* of a property that is NOT your principal residence.
b.  You are the original mortgagor or assumed the debt from the original mortgagor. (For tax purposes)
*County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan(s) being refinanced.*
*Recordation tax based on difference between new loan amount and the unpaid principal balance of the loan(s) being refinanced.*
REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced/modified.

**\*\*TO QUALIFY FOR REFINANCE EXEMPTIONS -- IT MUST BE SAME BORROWERS AND SAME PROPERTY\*\***

I/WE understand that if I/We fail to truthfully answer or provide information to avoid collection of County Transfer and State Recordation Tax, I/We may be found guilty of a misdemeanor and, on conviction, may be subject to a fine not exceeding $5,000.00 or imprisonment not exceeding (18) months or both; and I/WE authorize Prince George's County to take the appropriate steps necessary to confirm and verify the information made on this affidavit.

By signing this form, I/WE are affirming under penalties of perjury that the borrower(s) do not claim any other property as their principal residence.

_____          _____
Signature of Borrower               Signature of Borrower

In the State of __Maryland__, at the County/City of _Prince Georgis County_

I HEREBY CERTIFY, on this _8th_ day of _June_, 20 _15_, before me, the subscriber, a Notary Public, in and for said State and County/City, personally appeared, _Giselle Ursina Castro_, known to me to be, (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within affidavit, and acknowledged that he/she/they executed that same for the purposes therein contained, and further acknowledge the information therein is correct, and in my presence signed and sealed the same..

My Commission Expires:  _03 / 13 / 2016_     _Lyle R. Ahan_
                                             Notary Public Signature
                                             NOTE: IT IS ILLEGAL TO NOTARIZE A FORGED SIGNATURE

PGC TREAS Form #001
Rev 07/2013 (This form may be copied but not altered in any way)
**Alterations that affect taxation of the document will not be accepted.**

Copy

# AFFIDAVIT OF PRINCIPAL BALANCE

The Unpaid Principal Balance prior to the modification is: $ 337,339.00

_____ - Borrower     **6/8/15** ___ (Date)
GISELLE SALCEDO

_____ - Borrower     _____ (Date)

_____ - Borrower     _____ (Date)

_____ - Borrower     _____ (Date)

State of _Maryland_

County of _Prince George County_

On this _8th_ day of _June_ , 20 _15_ , before me personally appeared

_Giselle KARINA CASTRO_ known to me personally to be the person(s)

described in and who executed the same before me as (his/her) free act and deed.

My Commission Expires:

_____
Notary Public, State of

**GEETA R. LALWANI**
NOTARY PUBLIC STATE OF MARYLAND
Prince George's County
My Commission Expires March 13, 2016

_GEETA. R. LALWANI_
Printed Name of Notary

Seal

(Page 15 of 15)

Cop

**State of Maryland Land Instrument Intake Sheet**
☐ Baltimore City  ☐ County: PRINCE GEORGES

*Information provided is for the use of the Clerk's Office, State Department of*
*Assessments and Taxation, and County Finance Office Only.*
(Type or Print in Black Ink Only—All Copies Must Be Legible)

| 1 | Type(s) of Instruments | (☐ Check Box if addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|---|
| | | ☐ Deed | ☐ Mortgage | ☐ Other ____ | X Loan Modification |
| | | ☐ Deed of Trust | ☐ Lease | | Agreement |
| 2 | Conveyance Type Check Box | ☐ Improved Sale Arms-Length [1] | ☐ Unimproved Sale Arms-Length [2] | ☐ Multiple Accounts Arms-Length [3] | ☐ Not an Arms-Length Sale [9] |
| 3 | Tax Exemptions (if applicable) Cite or Explain Authority | Recordation | $367,916.75 | 4.000% | |
| | | State Transfer | | | |
| | | County Transfer | | | |

| 4 | | Consideration Amount | | Finance Office Use Only | |
|---|---|---|---|---|---|
| | | | | Transfer and Recordation Tax Consideration | |
| Consideration and Tax Calculations | Purchase Price/Consideration | $ | Transfer Tax Consideration | $ | |
| | Any New Mortgage | $30,577.75 | X ( )% = | $ | |
| | Balance of Existing Mortgage | $337,339.00 | Less Exemption Amount – | $ | |
| | Other: | $ | Total Transfer Tax | $ | |
| | | | Recordation Tax Consideration | $ | |
| | Other: | $ | X ( ) per $500 = | $ | |
| | Full Cash Value: | $ | TOTAL DUE | $ | |

| 5 | | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|
| | Recording Charge | $ | $ | | |
| | Surcharge | $ | $ | | Tax Bill: |
| Fees | State Recordation Tax | $ | $ | | |
| | State Transfer Tax | $ | $ | | C.B. Credit: |
| | County Transfer Tax | $ | $ | | |
| | Other | $ | $ | | Ag. Tax/Other: |
| | Other | $ | $ | | |

| 6 | Description of Property | District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOC |
|---|---|---|---|---|---|---|---|
| | SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | | 20-2228576 | | | | ; (5) |
| | | Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
| | | Location/Address of Property Being Conveyed (2) | | | | | |
| | | 5603 HADDON DR, LANHAM, MD 20706 | | | | | |
| | | Other Property Identifiers (if applicable) | | | | Water Meter Account No. | |
| | | Residential ☐ or Non-Residential ☐ | Fee Simple ☐ or Ground Rent ☐ Amount: | | | | |
| | | Partial Conveyance? ☐ Yes ☐ No | Description/Amt. of SqFt/Acreage Transferred: | | | | |
| | | If Partial Conveyance, List Improvements Conveyed: | | | | | |

| 7 | Transferred From | Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|---|---|
| | | GISELLE SALCEDO | |
| | | Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|---|---|
| | | NATIONSTAR MORTGAGE LLC | |
| | | New Owner's (Grantee) Mailing Address | |

| 9 | Other Names to Be Indexed | Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|---|---|

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | ☒ Return to Contact Person |
|---|---|---|---|
| | | Name: | |
| | | Firm NATIONSTAR MORTGAGE LLC | ☐ Hold for Pickup |
| | | Address 8950 CYPRESS WATERS BLVD | |
| | | COPPELL, TX 75019    Phone: ( ) | ☐ Return Address Provided |

| 11 | Assessment Information | IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER* | |
|---|---|---|---|
| | | ☐ Yes ☐ No  Will the property being conveyed be the grantee's principal residence? | |
| | | ☐ Yes ☐ No  Does transfer include personal property? If yes, identify: | |
| | | ☐ Yes ☐ No  Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). | |

| | Assessment Use Only – Do Not Write Below This Line | | | | | |
|---|---|---|---|---|---|---|
| Terminal Verification | Agricultural Verification | | Whole | Part | Tran. Process Verification | |
| Transfer Number | Date Received: | | Deed Reference: | | Assigned Property No.: | |
| Year 20 | | 20 | Geo. | Map | Sub | Block |
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |
| REMARKS: | | | | | | |

Distribution:    White – Clerk's Office    Canary – SDAT    Pink – Office of Finance    Goldenrod – Preparer    AOC-CC-300 (5/2001)

Exhibit "B"

 ASSURANT

# Broker Price Opinion

☒ Exterior Inspection
☐ Interior Inspection

| | |
|---|---|
| Property Address: 5603 Haddon Dr | Vendor ID: 4291240 |
| City, State, Zip: Lanham, MD 20706 | Deal Name: |
| Loan Number: ▉▉▉▉ | Inspection Date: 7/20/2017 |
| 2nd Loan / Client #: | Subject APN: 17202228575 |

| | | | |
|---|---|---|---|
| Property Occupancy Status | Owner | Does the Property Appear Secure? Yes | Est. Monthly Rent $1,850 | Sold in the last 12 Months? No |
| Currently Listed | Currently List Broker | List Broker Contact # | Initial List Price | Initial List Date | Current List Price | DOM / CDOM | Sale Price: |
| No | | | | | | | Sale Date: |
| Is the Subject Listing Currently Pending? | | Date of Contract | CDOM to Contract | | |

Subject Property Comments / External Influences
The subject property is well bracketed by the comps. The subject appears to be in average condition and conforms to the neigh

| | Subject | Sold Comp 1 | Sold Comp 2 | Sold Comp 3 | List Comp 1 | List Comp 2 | List Comp 3 |
|---|---|---|---|---|---|---|---|
| |  | | | | | | |
| Address | 5603 Haddon Dr Lanham, MD 20706 | 5611 Haddon Dr Lanham, MD 20706 | 9304 Fontana Dr Lanham, MD 20706 | 9209 Lanham Severn Rd Lanham, MD 20706 | 6200 Seabrook Rd Lanham, MD 20706 | 6308 93rd Ave Lanham, MD 20706 | 9438 Dubarry Ave Lanham, MD 20706 |
| Proximity | | 0.05 Miles | 0.21 Miles | 0.4 Miles | 0.71 Miles | 0.73 Miles | 0.65 Miles |
| Sale/List Price | | $271,000 | $273,000 | $275,000 | $270,000 | $280,000 | $260,000 |
| Sale Date | | 2/21/2017 | 6/30/2017 | 3/15/2017 | | | |
| Price Per Sq.ft. | $273.27 | $271.27 | $295.14 | $286.46 | $311.78 | $318.18 | $243.45 |
| Initial List Price | | $299,900 | $259,900 | $275,000 | $270,000 | $280,000 | $260,000 |
| Initial List Date | | 9/12/2016 | 4/1/2017 | 11/5/2016 | 6/8/2017 | 5/31/2017 | 7/16/2017 |
| Current/Final List | | $259,900 | $265,000 | $275,000 | $270,000 | $280,000 | $260,000 |
| DOM/CDOM | | 93 / 93 | 19 / 19 | 88 / 88 | 5 / 5 | 6 / 6 | 2 / 2 |
| Sales Type | | REO | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market |
| Finance Incentives | | FHA | FHA | Conventional | Conventional | Conventional | Conventional |
| Living Area | 999 | 999 | 925 | 960 | 866 | 880 | 1068 |
| #Rooms/Bed/Bath 1 | 5 / 3 / 1 | 5 / 3 / 1 | 6 / 3 / 2 | 5 / 3 / 1 | 4 / 2 / 1 | 5 / 3 / 1 | 5 / 3 / 1 |
| Year Built | 1962 | 1962 | 1960 | 1957 | 1955 | 1959 | 1960 |
| Bsmnt SF/% Finished | 999 / 100 | 999 / 100 | 617 / 100 | 960 / 100 | 217 / 50 | 880 / 100 | 1068 / 100 |
| Lot Size | 0.16ac | 0.16ac | 0.17ac | 0.23ac | 0.28ac | 0.18ac | 0.41ac |
| Property Type | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach |
| Style / Quality | Ranch / Q4 | Ranch / Q4 | Split/Bi-Level / Q4 | Ranch / Q4 | Colonial / Q4 | Ranch / Q4 | Ranch / Q4 |
| # of Units | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Condition | C4 | C3 | C4 | C3 | C3 | C4 | C4 |
| Pool/Spa | None | No / No | No / No | No / No | No / No | No / No | No / No |
| View | Residential | Residential | Residential | Residential | Residential | Residential | Residential |
| Porch/Patio/Deck | No / No / No | No / No / Yes | No / No / No | No / Yes / No | No / No / No | No / No / No | No / No / No |
| Fireplace | No | No | No | No | Yes | No | No |
| Garage | None | None | None | 1 Attached | 1 Attached | None | None |
| Other Features | None | None | None | None | None | None | None |
| HOA Fees | 0/mo | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr | 0/yr |
| Subdivision | Westgate Woods | Westgate Woods | Seabrook Park Estates | Hynesboro Park | Seabrook-Resub Of Lot 26 | Hynesboro Park | Seabrook |
| School District | Unknown | Unknown | Unknown | Unknown | Unknown | Unknown | Unknown |
| Data Source - ID | County Tax - NA | MLS - PG9763271 | MLS - PG9903933 | MLS - PG9804045 | MLS - PG9967386 | MLS - PG9962656 | MLS - PG9987052 |

| Market Time 90-120 days | As-Is Price Estimate | As-Repaired Price Estimate | Land Only Price | |
|---|---|---|---|---|
| Anticipated Sale Price | $273,000 | $273,000 | $70,200 | |
| Recommended List Price | $287,000 | $287,000 | | |
| Recommended Sales Strategy: | | ☒ As - Is | ☐ Repaired | |



| Address | City | BR | BA | Lot Size | Sale/List Date | Year Built | Sale/List Price | Distance |
|---|---|---|---|---|---|---|---|---|
| 5603 Haddon Dr | Lanham | 3 | 1 | 0.16ac | | 1962 | | 0.05 Miles |
| 5611 Haddon Dr | Lanham | 3 | 1 | 0.16ac | 2/21/2017 | 1962 | $271,000 | 0.21 Miles |
| 9304 Fontana Dr | Lanham | 3 | 2 | 0.17ac | 6/30/2017 | 1960 | $273,000 | 0.4 Miles |
| 9209 Lanham Severn Rd | Lanham | 3 | 1 | 0.23ac | 3/15/2017 | 1957 | $275,000 | 0.71 Miles |
| 6200 Seabrook Rd | Lanham | 2 | 1 | 0.28ac | 6/8/2017 | 1955 | $270,000 | 0.73 Miles |
| 6308 93rd Ave | Lanham | 3 | 1 | 0.18ac | 5/31/2017 | 1959 | $280,000 | 0.65 Miles |
| 9438 Dubarry Ave | Lanham | 3 | 1 | 0.41ac | 7/16/2017 | 1960 | $260,000 | |

**Neighborhood Data:**

| | |
|---|---|
| Location Type: Suburban | Market Trend: Stable |
| Housing Supply: Stable | Crime/Vandalism: Low Risk |

Neighborhood Pride of Ownership: Average

Economic Trend: Stable    REO Driven? No

Neighborhood Trend: Stable    Avg Age of Home: 58

Avg Marketing Time of Comparable Listings: 3 to 6 Mos.

Price Range: $200,000 to $350,000    Median Price: $273,000    Predominate Value: $273,000    Average DOM: 36

Number of units for rent:    Number of units in complex for sale:

**Negative Neighborhood Factors that will detract from the subject:**

None Noted

**Neighborhood Comments:**

Comps selected for this report are all settled properties within the subjects market considered to be the best available at the time of the inspection

**Marketability of Subject:**

Most Likely Buyer: Owner    Types of Financing the Subject will NOT qualify for: None

Will this be a problem for resale? If yes, please explain:

None Noted

**Comparables:**

Sale 1 Comments    Similar in Lot Size, Year, Bed Room, Full Bath, Sqft, Garage.

Sale 2 Comments    Similar in Lot Size, Year, Bed Room, Garage. Superior in Full Bath. Inferior in Sqft.

Sale 3 Comments    Similar in Lot Size, Year, Bed Room, Garage. Superior in Full Bath. Inferior in Sqft.

List 1 Comments    Similar in Year, Full Bath. Superior in Lot Size, Garage. Inferior in Bed Room, Sqft.

List 2 Comments    Similar in Year, Bed Room, Full Bath, Garage. Superior in Lot Size. Inferior in Sqft.

List 3 Comments    Similar in Year, Bed Room, Full Bath, Garage. Superior in Lot Size, Sqft.

**Comments:**

Service Provider Comments:

The subject property is bracketed well by these comparables. The value of the subject is in line with the current market trends. The comps used in this report support the subject value. The value is well bracketed by the Sold comps to arrive at a value that the subject can successfully be sold for. Search for comps was done using a 0.75 mile radius around the subject, 25% difference in gla, 20 years difference in age and a 180 day close date. Due to lack of similar comps which would bracket to subject I had to use few comps which may cross major road but this does not have any major impact on the final value of the subject as these comps share similar amenities as subject and have same appeal to a buyer looking at the subject. There is no HOA. Property is occupied. Due to limited comparables in the area it is necessary to use comparables that vary from the subject condition.

Vendor Comments:

| Service Provider Signature | /s/ Chester Benjamin | BPO Effective Date | 7/20/2017 |
|---|---|---|---|
| Service Provider Company | Keller Williams Preferred Properties | Service Provider Lic. Num. | ███████ |

**Repairs**

Recommended Repairs would bring the subject to: $273,000

| Internal Repairs | Comment | Total |
|---|---|---|
| Paint | | $0 |
| Walls/Ceiling | | $0 |
| Carpet/Floors | | $0 |
| Cabinets/Countertops | | $0 |
| Plumbing | | $0 |
| Electrical | | $0 |
| Heating/AC | | $0 |
| Appliances | | $0 |
| Doors/Trim | | $0 |
| Cleaning | | $0 |
| Other | | $0 |
| | Internal Repair Total: | |

| External Repairs | Comment | Total |
|---|---|---|
| Roof | | $0 |
| Siding/Trim | | $0 |
| Structural | | $0 |
| Windows/Doors | | $0 |
| Paint | | $0 |
| Foundation | | $0 |
| Garage | | $0 |
| Landscaping | | $0 |
| Fence | | $0 |
| Other | | |
| | External Repair Total: | |
| | Repair Total: | |



Subject Front

**5603 Haddon Dr
Lanham, MD 20706**



Address



Side



Side



Street



Street



View across street



**Comparable Sale #1**

5611 Haddon Dr
Lanham, MD 20706
Sale Date: 2/21/2017
Sale Price: $271,000



**Comparable Sale #2**

9304 Fontana Dr
Lanham, MD 20706
Sale Date: 6/30/2017
Sale Price: $273,000



**Comparable Sale #3**

9209 Lanham Severn Rd
Lanham, MD 20706
Sale Date: 3/15/2017
Sale Price: $275,000



**Comparable Listing #1**

6200 Seabrook Rd
Lanham, MD 20706
Current List: $270,000



**Comparable Listing #2**

6308 93rd Ave
Lanham, MD 20706
Current List: $280,000



**Comparable Listing #3**

9438 Dubarry Ave
Lanham, MD 20706
Current List: $260,000

Neither Assurant Valuations nor any of its affiliates, members, managers or contractors makes any representation or warranty as to the accuracy or completeness of the information contained in this broker price opinion. You should use good faith efforts in determining that the content of all information to be provided to or obtained by you is accurate. This analysis has been performed by a licensed real estate professional and is intended for the benefit of the addressee only. The Brokers Price Opinion is not to be construed as an appraisal and may not be used as such for any purpose. The purpose of this BPO is to provide an estimate of the probable sales price of the property, utilizing the sales comparison approach methodology and will not be used for loan origination. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed appraiser must be obtained.

**Exhibit "C"**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

IN RE:                                                  CASE NO.: 6:17-bk-04395-CCJ
                                                                            CHAPTER 7

Giselle Karina Castro aka Giselle K
Salcedo,

     Debtor.

_____/

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

THIS CASE came on consideration without a hearing on NATIONSTAR MORTGAGE

LLC's ("Secured Creditor") Motion for Relief from the Automatic Stay (Docket No. _____).  No

appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

    **ORDERED**:

    1.  Secured Creditor's Motion for Relief from the Automatic Stay is GRANTED.

    2.  The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the

Secured Creditor's interest in the following property located at 5603 Haddon Drive,

Lanham, MD 20706 in Prince George's County, and legally described as stated in the

mortgage attached in Composite Exhibit "A."

3. This Order is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(3) is granted.

6. Attorneys' fees and cost in the amount of $526.00 are awarded for the prosecution of this motion, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

### 

Attorney, Bouavone Amphone, Esq., is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

2